UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:23-CV-00078-HBB

**SHYANN EMBRY et al.**                                                                                          **PLAINTIFFS**

**VS.**

**DISCOUNT MOTORS, LLC et al.**                                                                         **DEFENDANTS**

MEMORANDUM OPINION
AND ORDER

Before the Court is Plaintiffs' motion for partial summary judgment on the issue of Defendants' liability (DN 53). Defendant Eddie Howard has responded at DN 61, Defendants Discount Motors, LLC, and Donald Adams have responded at DN 63, and Plaintiffs have replied at DN 64. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73 the parties have consented to the undersigned's exercise of final judgment authority (DN 13, 16).

Introduction

Defendant Discount Motors is a Kentucky limited liability company selling used cars (DN 1, p. 2). Defendant Don Adams owns and is employed by Discount Motors (*Id.*). Defendant Eddie Howard was an employee (*Id.*). Plaintiffs Shyann Embry and Leah Early purchased used vehicles from Discount Motors and allege that the Defendants manipulated the odometers on the vehicles to misrepresent the mileage in violation of the Federal Odometer Act (*Id.* at pp. 5-6, 8). In addition to their individual claims, Embry and Early asserted claims on behalf of a class of other purchasers of used car with similarly manipulated odometer mileage (*Id.* at pp. 6-8). The Court has, without opposition from the Defendants, certified the claims as a class action (DN 57). Plaintiffs' present

motion seeks partial summary judgment on the Defendants' liability, reserving for trial the issue of damages.

## Summary Judgment Standard

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion." *Bell v. City of E. Cleveland*, No. 96-3801, 1997 WL 640116, at *4 (6th Cir. Oct. 14, 1997) (*citing Liberty Lobby*, 477 U.S. at 252).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *See Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008). The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *See Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" FED. R. CIV. P. 56(c)(1); *see also Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 131–32 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be

evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby,* 477 U.S. at 252. Rule 56(c)(1) requires that a "party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A).

## The Federal Odometer Act

Plaintiffs assert their claims pursuant to 49 U.S.C. §§ 32701-32711, the Federal Odometer Act (DN 1, pp. 8-9). In enacting the legislation, Congress found that purchasers rely upon a vehicle's odometer reading as an indication of its condition and value, and are entitled to rely upon that reading as accurate, thus the statute prohibits tampering with vehicle odometers. *Id.* at § 32701(a). Specifically, the statute prohibits altering an odometer to change its mileage, either directly, by directing another or in conspiracy. *Id.* at § 32703(2) and (4). When an odometer is serviced, repaired, or replaced, the mileage must remain the same as before the service, repair, or replacement. *Id.* at § 32704(a). If this cannot be accomplished, then the odometer must be adjusted to zero and a written notice must be attached to the left door frame specifying the date of work and mileage at that time. *Id.* at § 32704(a)(2). A person who violates the statute with the intent to defraud is liable for three-times the actual damages or $10,000, whichever is higher. *Id.* at § 32710(a). The statute further permits private enforcement by civil action, with allowance for costs and reasonable attorney fees. *Id.* at § 32710(b).

## Plaintiffs' Assertions of Fact

Plaintiffs contend that Adams and Howard purchased hundreds of cars from two auto auction businesses in Indiana and transported them to Discount Motors in Owensboro, Kentucky

(DN 53-1, p.1). Adams personally bid on each vehicle, and Howard would sign the paperwork to acquire them (*Id.* at p. 2[1]). The repair shops Discount Motors utilized when pre-sale repairs were needed did not do any work on the odometers (*Id.* at p. 2-3[2]). Discount Motors possessed a device capable of altering a vehicle odometer reading (DN 43-4, p. 7). The Defendants, or others at their direction, used the device to alter the mileage reflected on the vehicle odometer to reflect a lower mileage total (DN 53-1, p. 2). After the mileage was altered, the Defendants would apply for new titles reflecting the lowered mileage (*Id.* at p. 3[3]). Plaintiffs contend that the Defendants did so because the lowered mileage increased the vehicles' values (*Id.*). Plaintiffs represent that they have identified over one hundred transactions between 2019 and 2023 where they and the Class purchased vehicles with altered odometers (*Id.*[4]).

Specifically, in 2021 Plaintiff Early bought a 2008 Pontiac Grand Prix from Discount Motors (*Id.* at pp. 5-6). Adams had purchased the vehicle at auction on October 15, 2020, and Howard signed a Kentucky Title transferring its ownership to Discount Motors (*Id.* at p. 5). The bills of sale and title both reflect the vehicle's mileage as 230,179 miles (*Id.*[5]). However, after Early purchased the vehicle, she received a title for the vehicle reflecting 101,862 miles (*Id.* at pp. 5-6[6]).

---

[1] Referencing DN 43-3, Discount Motors Vehicle Purchase List; DN 43-4, Discount Motor's Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents at p. 4 (identifying Adams and Howard as individuals who signed documents necessary to take possession of vehicles purchased by Discount); DN 47-1, pp. 29, 34-35, 43-46.
[2] Referencing DN 47-1 Adams Depo. at pp. 19-21; Exhibit 43-4, Discount Motor's Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents at p. 3.
[3] Referencing as examples DN 43-6 and 43-7.
[4] Referencing DN 43-8, "Odometer Discrepancy Summary." Defendants have not raised any factual challenge or evidentiary objection to the accuracy of this summary.
[5] Referencing DN 43-9, Oct. 15, 2020, Pontiac Bill of Sale; DN 43-10, Pontiac Title, Date of Issue Sept. 28, 2012.
[6] Referencing DN 43-11, Depo. of Leah Early at pp. 11-14, 17-18, 20-21, 27; DN 43-12, June 15, 2021, Replacement Title Application; DN 43-13, Pontiac Title, Date of Issue Jan. 4, 2023, at p. 1.

In 2023, Early bought another vehicle from Discount Motors, this one a 2009 Nissan Altima (*Id.* at p. 6). Again, Adams bought the car and Howard signed an Indiana title transferring ownership to Discount Motors (*Id.*[7]). The bill of sale title reflected mileage of 198,608 miles (*Id.*[8]). However, after Early purchased the vehicle, she received a title for the vehicle reflecting 140,428 miles (*Id.* at p. 7[9]).

In 2021, Plaintiff Embry bought a Chrysler Town & Country from Discount Motors (*Id.*). Adams bought the vehicle at auction on April 15, 2021, and Howard signed an Illinois title transferring the ownership to Discount Motors (*Id.*[10]). The bill of sale and title reflected mileage of 189,548 (*Id.*). However, after Embry purchased the vehicle, she received a title reflecting 122,184 miles (*Id.* at pp. 7-8[11]). The Plaintiffs contend that, had they known the true mileage of the vehicles, they would not have purchased them (*Id.* at pp. 6-8).

During Adams' deposition, at which he appeared as Discount Motors' designated representative, he was specifically questioned about eleven vehicles Discount Motors sold where the vehicles were advertised for sale with lower mileage than reflected on the auction purchase documentation (*Id.* at p. 4[12]). For two vehicles, he speculated that the instrument gauges had been replaced with ones taken from junked vehicles, but was unable make the representation with any certainty (*Id.*[13]). For the remainder, he had no knowledge of why the mileage was decreased (*Id.*[14]). The undersigned has reviewed the entirety of Adams' deposition testimony and, other than

---

[7] Referencing DN 43-14, Nov. 18, 2021, Nissan Bill of Sale.
[8] Referencing *id*.
[9] Referencing DN 43-16, Nissan Title, Date of Issue Mar. 20, 2023, at p. 1.
[10] Referencing DN 43-17 Apr. 15, 2021, Chrysler Bill of Sale; DN 43-18, Chrysler Title, Date of Issue Apr. 26, 2021.
[11] Referencing DN 43-19, Depo. of Shyann Embry at pp. 9, 11-12, 15-19, 24; 54 Exhibit 19: Embry Depo. at pp. 15-17; DN 43-10, Chrysler Title, Date of Issue Nov. 2, 2021, at p. 1.
[12] Referencing DN 47-1, Adams Depo. at pp. 56-78.
[13] Referencing *id.* at pp. 60, 65.
[14] Referencing *id.* at pp. 56-78.

speculation that an instrument gauge had been replaced in a few instances,[15] he had no explanation for why the odometer readings decreased between Discount Motors' purchase and sale. Moreover, he did not dispute that the odometer readings had decreased while in Discount Motors' possession (*see generally* DN 47-1).

Adams and Discount Motors' Response

In responding to the motion for summary judgment, Adams and Discount Motors state "it should be noted that neither Don Adams nor Eddie Howard has ever acknowledged that they altered the odometers on the vehicles that were purchased by Embry, Early, or any other members of the purported class" (DN 63, p. 2). However, simply stating that they have not confessed to altering the odometers does not create a question of fact. To the contrary, Fed. R. Civ. P. 56(c)(1)(A) requires the Defendants to rebuff Plaintiffs' factual assertions by pointing to some part of the record to demonstrate a disputed question of fact. Adams and Discount Motors have failed to do so. "For purposes of a summary judgment motion, the Court may consider a fact undisputed if one party makes an assertion of fact and the other party 'fails to properly address' it.'" *SAAP Energy, Inc. v. Bell*, No. 1:12-CV-98-DJH, 2015 U.S. Dist. LEXIS 19751, at *5 (W.D. Ky. Feb. 19, 2015) (*quoting* FED. R. CIV. P. 56(e)).

Instead, Adams and Discount Motors seek refuge in the fact that, for each of the vehicles in question, the purchaser was provided an application for Kentucky certificate of title or registration, on which there was an express notation advising the purchaser "The odometer reading is not the actual mileage. **WARNING – ODOMETER DISCREPANCY**" and a Kentucky Department of Transportation transfer of ownership and disclosure of mileage stating "I hereby

---

[15] The Act does not prohibit legitimate repair or replacement of an odometer. However, the Act addresses this situation in section 32704(a) which requires that the odometer be reset to zero and a notice affixed to the vehicle. There is no evidence that, for any vehicle with an allegedly replaced odometer, the odometer was reset to zero and the required notice affixed to the vehicle. Adams testified that he was unaware of this requirement.

certify that the odometer reading is NOT the actual mileage. WARNING – ODOMETER DISCREPANCY" (DN 63, p. 1) (emphasis in original). Indeed, Discount Motors has testified that *every* car the business sold was accompanied by this disclaimer (DN 47-1, p. 62). Beyond this, Adams and Discount Motors offer no legal authority, or developed argument, as to how this disclosure creates a question of fact as to whether they violated the Federal Odometer Act or bar Plaintiffs' claims against them.

The Court infers that Adams and Discount Motors argue that they made no representation that the mileage reflected on the vehicle title was accurate and, to the contrary, disclosed that there was a discrepancy in the odometer reading. This fails to absolve them of liability. The Federal Odometer Act provides that the fundamental purposes of the Act are to (1) "prohibit tampering with motor vehicle odometers" and (2) "provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers." 49 U.S.C. § 32701(b)(1) & (2). The Plaintiffs' evidence that the odometers were altered to reflect lower mileage on vehicles is unrefuted. Perhaps the Defendants believe they are protected by section 32705(a)(1) which requires a person transferring ownership of a vehicle to give the transferee a disclosure of the cumulative mileage registered on the odometer, or "disclosure that the actual mileage is unknown, if the transferor knows that the odometer reading is different from the number of miles the vehicle has actually traveled." *Id.* at §32705(a)(1)(B). Plaintiffs' proof is not that the Defendants were ignorant of the actual mileage and represented otherwise, rather, their proof is that the Defendants *changed* the odometer readings. Section 32705 does not act as a license to tamper with an odometer with impunity, so long as the seller discloses that it no longer reflects the actual mileage. *Id.* This would frustrate the very purpose of the Act.

It is not enough, however, that the Defendants violated the Act. They must also have done so with the intent to defraud. *See id.* at § 32710(a). Even where the seller was not the one actually tampering with the odometer, courts have inferred an intent to defraud when the seller had reason to know the mileage on the vehicle was greater than reflected by the odometer and failed to take reasonable steps to determine the actual mileage. *See Avila v. Used Car Showcase 1 LLC*, No. CV-20-01756-PHX-DLR, 2021 U.S. Dist. LEXIS 232918, at *9-10 (D. Ariz. Dec. 3, 2021). Moreover, a court may infer an intent to defraud from the fact that an odometer reading of a vehicle changed while under the dominion of the conspirators. *See Rios v. Winners Auto Sale, LLC*, No. DKC 23-1140, 2024 U.S. Dist. LEXIS 76186, at *13 (D. Md. Apr. 26, 2024). The case for finding intent to defraud is strongest where, as here, the Plaintiffs have demonstrated intentional tampering with the odometer in direct violation of the Act. *See Nabors v. Auto Sports Unlimited, Inc.*, 475 F. Supp. 2d 646, 652 (E.D. Mich. 2007).

Howard's Response

Similar to Adams and Discount Motors, Howard argues that the odometer discrepancies were disclosed to the purchasers and, thus, there can be no contention that the mileages were misrepresented (DN 61, p. 3). In conjunction with this argument, Howard contends, without citation to any authority, that a claim for fraudulent misrepresentation must satisfy the following elements: 1) a representation was made; 2) the representation was false; 3) the defendant knew the representation was false or made it recklessly without the knowledge of the truth; 4) the misrepresentation was made with the intention that the plaintiff rely upon it; 5) the plaintiff did rely on the misrepresentation, and; 6) the plaintiff suffered harm as a result (*Id.* at p. 2). He argues that Plaintiffs can satisfy only the first element (*Id.* at p. 3).

While Howard has correctly identified the elements of common law fraudulent misrepresentation (*see, e.g., Shapira v. Rare Character Whiskey Co., LLC*, No. 3:23-CV-602-RGJ, 2024 U.S. Dist. LEXIS 47108, at *25 (W.D. Ky. Mar. 18, 2024)), a claim under the Federal Odometer Act does not employ the common law elements.

> Congress' express purposes were to eliminate odometer tampering and provide safeguards against odometer fraud for consumers. As a means of doing so, Congress displaced what would have been an ordinary action for common law fraud with a statutory scheme that eased plaintiffs' proofs as to the elements of one type of fraud: odometer fraud. All plaintiffs need show under the Act is that the transferor of a motor vehicle violated the Act and had a fraudulent intent.

*Nabors*, 475 F. Supp. 2d at 651-52. Thus, the same findings discussed in addressing Adams and Discount Motors' fraudulent intent where the odometers were intentionally manipulated apply equally to Howard.

Howard also takes issue with the sufficiency of the Plaintiffs' evidence that the Defendants tampered with the vehicles' odometer readings insofar as they have presented videos which they purport demonstrate such tampering (DN 61, pp. 4-5). According to the Plaintiffs' motion, the allegation that Defendants were altering odometer readings first came to light when a Discount Motors employee, Keegan Robertson, made a report to the Owensboro Police Department (DN 53-1, pp. 4-5). Robertson provided the investigators with a video of himself displaying the function of an odometer alteration device in Discount Motors' possession (*Id.* at p. 5). One of the investigators, Sergeant Aron Contratto, produced during his deposition a video "of Adams and Howard on Discount property entering a vehicle with a device that appeared to be an odometer alteration device" (*Id.*). With regard to the videos, Howard contends:

> Also in the Plaintiffs request for Summary Judgement, its alleged there is video evidence implicating the Defendants. This allegation is false. This video evidence does not exist and Defendant Howard can easily debunk this claim by reviewing the videos and photographs provided by the Plaintiffs in the presence of all interested parties, and show the videos show only a vehicle being scanned with a diagnostic scanner in one video, and a vehicle key being made in another video.

9

> In addition, the video provided by Keegan Robertson purporting to show an odometer alteration proves nothing. There is no indication of what vehicle is involved, who the owner of that vehicle was, the location the video was taken, nor the beginning mileage of the vehicle.

(DN 61, p. 4). Howards' challenge to the evidentiary value of the videos is valid. In addition to Sergeant Contratto, Owensboro Police Officer Michael Roby participated in the odometer fraud investigation. At his deposition he produced one of the electronic devices seized from Discount Motors which he also described as "a smart diagnostics system. It can be used for several things in diagnostics on a car, but it can also be used to turn back an odometer in a car" (DN 53-3, p. 10). Sergeant Contratto testified regarding the videos in question:

> Q. And what did those videos show?
>
> A. A lot of the videos that we saw, like, most of them—we spent a lot of our time on the surveillance videos that we watched because he had multiple cameras. The biggest one was where we saw Don and Eddie both using one of the tools and accessing a car. You watch them plug it in, which appears that they were using it for. We can't make it—we can't determine exactly what they were doing, but Eddie is kind of leaned up against the garage door, brings the video down, Don is getting in the car, Eddie walks over to it. That was the biggest video we saw because that was the one that we kind of like, you know, there they are using it.
>
> Q. In that video, you can't see what they are using the X-Tool to do, but it shows them using that tool?
>
> A. Correct.

(DN 53-4, pp. 14-15). Regarding another portion of the video:

> A. This is just more of the videos.
>
> Q. Okay. So this is just a continuation of that same one. And does it appear in that video that Don Adams is using the tool on that vehicle outside?
>
> A. Yes.
>
> Q. Okay. And, again, as we discussed earlier, you can't see exactly what he's doing, but that tool is similar to the ones that we discussed earlier that were capable of altering odometers?

    A. Correct.

(*Id.* at p. 34).  Sergeant Contratto testified that, while there was video in which Keegan demonstrated using the device to alter a vehicle odometer, no video definitively showed Adams using it for that purpose (*Id.* at p. 18).  Adams, as Discount Motors' representative, testified that the scanner was capable of functions other than adjusting the odometer, including scanning airbags and "training" electronic keys (DN 47-1, p. 84).  Consequently, the videos produced by the Owensboro Police Department only demonstrate the Defendants using an electronic device capable of altering a vehicle odometer, but also capable of other diagnostic functions.  If this was the sole evidence upon which the Plaintiffs rely, then there would clearly be a question of fact regarding the Defendants' liability.  Howard fails, however, to challenge any of the other evidence Plaintiffs offer which, independent of the videos, is sufficient to establish his liability.  Again, "[f]or purposes of a summary judgment motion, the Court may consider a fact undisputed if one party makes an assertion of fact and the other party 'fails to properly address' it." *SAAP Energy, Inc,* 2015 U.S. Dist. LEXIS 19751 at *5.

Liability

    Plaintiffs have produced evidence that, between the time the vehicles were purchased at auction and ultimately sold to the buyers, the odometer readings decreased.  Other than a few instances of speculation as to replacing instrument clusters (for which the statutory notice requirements were not adhered to), the Defendants have provided no explanation for why this happened.  The only reasonable finding, therefore, is that the odometers were tampered with while under Discount Motors' dominion.  Discount Motors, as a limited liability company, can only act through its employees, and is vicariously liable for acts committed within the scope of their employment.  *Harden v. Hillman*, No. 3:15-CV-00594-JHM, 2018 U.S. Dist. LEXIS 123467, at

*16 (W.D. Ky. July 24, 2018). This is true even if the wrongful acts are intentional, so long as the employee acts with the purpose of serving the employer. *Id.* at *17.

The Plaintiffs have not produced any non-hearsay direct evidence that either Adams or Howard personally tampered with an odometer. However, the Federal Odometer Act does not require proof of direct action, as it also prohibits conspiracy to violate the act. 49 U.S.C. § 32703(4). The Plaintiffs have established that Adams and Howard participated in the acquisition and sale of vehicles with altered odometers and participated in the procurement of sale and title documents indicative of mileage alteration. This is sufficient to establish their participation in a conspiracy to tamper with the odometers. As the undersigned has already ruled in denying their prior motions for summary judgment, that they acted in service of an LLC does not shield them from liability. *See* DN 48 (*reported at* 2024 U.S. Dist. LEXIS 162506).

**WHEREFORE**, the Plaintiffs' motion for partial summary judgment on the issue of Defendants' liability, DN 53, is **GRANTED**. Plaintiffs are awarded judgment against the Defendants on the issue of liability. The issue of damages is reserved for future adjudication.

H. Brent Brennenstuhl
United States Magistrate Judge

January 8, 2025

Copies: Counsel